UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WESTPORT INSURANCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> JACOBS & BARBONE, P.A., LOUIS M. BARBONE, and KERRY L. BEESE-MUNOZ, <br><br> Defendants | Civil Action No. 1:08-cv-0801 (NLH) <br><br> **AMENDED OPINION** |

APPEARANCES:

Jason S. Feinstein, Esq.
STERNS & WEINROTH, PC
50 West State Street, Suite 1400
PO Box 1298
Trenton, NJ 08607-1298
*Attorneys for Plaintiff*

Robert P. Conlon, Esq. (Pro Hac Vice)
Christopher A. Wadley, Esq. (Pro Hac Vice)
WALKER WILCOX MATOUSEK, LLP
225 W. Washington St., Suite 2400
Chicago, IL 60606
*Attorneys for Plaintiff*

Arthur J. Murray, Esq.
Louis M. Barbone, Esq.
JACOBS & BARBONE, PA
1125 Pacific Avenue
Atlantic City, NJ 08401
*Attorneys for Defendants
Jacobs & Barbone, PA and Louis M.
Barbone*

John H. Sanders, II
EICHEN, LEVINSON & CRUTCHLOW, LLP
40 Ethel Road
Edison, NJ 08817
*Attorneys for Defendant Kerry L.
Beese-Munoz*

**HILLMAN, District Judge**

This matter comes before the Court upon the Motion of Plaintiff, Westport Insurance Corp. ("Westport"), for Partial Summary Judgment and the Cross-Motion of Defendants, Jacobs & Barbone, PA and Louis M. Barbone (collectively, "Barbone"), for Partial Summary Judgment. For the reasons set forth below, Plaintiff's Motion is granted and Defendants' Motion is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

This matter involves a dispute between the parties over whether Barbone has coverage under a professional liability insurance policy issued by Westport for a legal malpractice claim that was brought against Barbone.

### A. Underlying Action

On November 18, 2003, Kerry L. Beese-Munoz ("Beese-Munoz") retained Barbone as legal counsel to file a lawsuit on her behalf against her former employer for sexual harassment. Accordingly, on March 15, 2004, Barbone filed a complaint against Beese-Munoz's former employer in the United States District Court for the District of New Jersey. The action was captioned Beese-Munoz v. Johnson, No. 04-cv-1224-JEI-AMD. On October 21, 2004, however, the district court dismissed Beese-Munoz's action without prejudice, because of Barbone's failure to serve a proper summons on the defendant pursuant to Fed. R. Civ. P. 4(a).

Following the dismissal of Beese-Munoz's action, Barbone asserts that extensive research was done by one of his associates, Erika A. Appenzeller ("Appenzeller"), on the issue of whether Beese-Munoz had exhausted her administrative remedies. Barbone asserts that the validity of Beese-Munoz's action had been called into question on this issue by new documents submitted by her former employer along with its Motion to Dismiss.[1] Based upon these documents and Appenzeller's research, Barbone alleges that he came to the conclusion that Beese-Munoz's failure to file an administrative complaint with her employer sooner was an "incurable defect," and that her "complaint could not be reinstated as [Barbone] could not allege a good faith basis for relief knowing that the relief was barred as a matter of law."

In November 2005, approximately one year after her Complaint was dismissed for failure to serve a proper summons, Appenzeller contacted Beese-Munoz and informed her for the first time that her action had been dismissed. At that time, Appenzeller allegedly advised Beese-Munoz that Barbone would not reinstate her action in federal court because of the perceived

---

[1] Beese-Munoz's employer had also argued in its Motion to Dismiss, that her Complaint should be dismissed because she failed to exhaust her administrative remedies by not timely meeting with an EEO Counselor. Having dismissed the Complaint for failure to serve a proper summons, however, the Court did not reach this issue.

3

administrative exhaustion issue, but that she would continue to explore whether an action could be brought in state court. During January and February of 2006, Barbone wrote to Beese-Munoz on two occasions in response to her inquiries about the status of her case and why it was not being pursued. In these letters, Barbone again advised Beese-Munoz that her lawsuit had been dismissed on a "technical insufficiency," and that the defect "could have been fixed and the matter reinstated," but that ultimately her alleged "failure to file a timely EEO Complaint and the failure to exhaust administrative remedies . . . is an absolute bar to filing a Complaint in the District Court." Barbone also wrote, "I do not believe that we would be successful in pursuing this case given the mandates of administrative exhaustion." Following this exchange there was no further contact between Barbone and Beese-Munoz.

On June 25, 2007, Beese-Munoz filed a legal malpractice complaint against Barbone in the Superior Court of New Jersey - Law Division, Ocean County, captioned <u>Beese-Munoz v. Barbone</u>, No. OCN-L-2183-07. In her Complaint, Beese-Munoz alleged that Barbone failed to exercise reasonable care in the legal services he provided to her in connection with her prior sexual harassment and gender discrimination lawsuit.

**B.   Insurance Policy and Claim for Coverage**

In December 2004, approximately two months after Beese-Munoz's action was dismissed and nearly one year before Beese-Munoz was informed of the fate of her lawsuit, Barbone applied for a professional liability insurance policy from Westport ("the Policy").  The application inquired whether Barbone was "aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of a claim or suit for lawyers professional liability."  Although Barbone disclosed the existence of one prior claim and one potential claim in response to this inquiry, he did not identify the Beese-Munoz matter on the application as a potential source of liability.  The application made clear that "any policy issued will provide coverage on a claims-made and reported basis for only those claims that are made against the Insured and reported while the policy is in force and that coverage ceases upon termination of the policy."  It further explained that "[a]ll claims will be excluded that result from any acts, circumstances or situations known prior to the inception of coverage being applied for, that could reasonably be expected to result in a claim."

Based upon its consideration of Barbone's application, Westport issued him a professional liability insurance policy for the period from December 15, 2004 to December 15, 2005.  This policy provided, in Insuring Agreement I.A., that Westport agreed

5

to

> pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to [Westport] in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of a WRONGFUL ACT occurring on or after the RETROACTIVE DATE.

The Policy further provided that Westport "shall . . . have the right and duty to select counsel . . . and to defend any CLAIM for LOSS against any INSURED covered by Insuring Agreement 1.A., even if such CLAIM is groundless, false or fraudulent." Exclusion B of the Policy, however, excluded coverage for

> any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from . . . any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of the POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM.

In the ensuing years, Barbone applied for and received renewal policies covering the periods from December 15, 2005 to December 15, 2006, and December 15, 2006 to December 15, 2007. Both the applications completed by Barbone and the policies ultimately issued by Westport contained language identical to original application submitted and policy obtained by Barbone.

On August 15, 2007, nearly two months after Beese-Munoz filed her malpractice action against him, Barbone notified

Westport of the claim that had been brought against him by Beese-Munoz for the first time. Westport faxed a letter to Barbone on October 8, 2007 advising him of its coverage evaluation. In this letter, Westport advised Barbone that it reserved its right to deny coverage of the claim under Exclusion B of the Policy even though the claim was filed within the 2006-2007 policy period. Subject to this reservation, Westport retained legal counsel to defend Barbone in Beese-Munoz's malpractice action.

On February 14, 2008, Westport filed the instant lawsuit seeking a declaration that it had no duty to defend or indemnify Barbone against the Beese-Munoz action under the terms of the Policy. Westport now moves for partial summary judgment on the issue of whether Barbone is entitled to coverage under the Policy as a matter of law. Likewise, Barbone now cross-moves for partial summary judgment on the same issue.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence

7

such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

8

Likewise, if the review of a cross-motion for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998).

**B.   Whether Exclusion B Permits the Denial of Coverage**

The parties do not dispute that Barbone provided notice of the claim within the December 15, 2006 to December 15, 2007 policy period. The dispute arises with respect to whether Barbone could have reasonably foreseen prior to the effective date of the Policy that his representation of Beese-Munoz in the underlying action could give rise to a claim for malpractice, thereby bringing the claim within Exclusion B of the Policy and permitting Wesport to deny coverage.

As set forth above, Exclusion B provides that coverage will be denied for

> any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from . . . any act, error, omission, circumstance or PERSONAL INJURY occurring prior to the effective date of the POLICY if any INSURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PERSONAL INJURY might be the basis of a CLAIM.

In other words, Exclusion B requires that two conditions be met before coverage can be excluded: (1) that the insured knew of an act, error, omission, circumstance or personal injury occurring

9

prior to the effective date of the policy; and (2) that the insured could have reasonably foreseen that the act, error, omission, circumstance or personal injury might be the basis of a claim.

In applying such policy provisions, the Third Circuit has established and the parties agree that a subjective/objective test must be employed. See Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 237 (3d Cir. 2006); Westport Ins. Corp. v. Mirsky, 84 F. Appx. 199, 200-201 (3d Cir. 2003); Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 304 (3d Cir. 2001). "The first condition in the exclusion is satisfied if *the insured had knowledge* of the relevant suit, act, error, or omission." Colliers, 458 F.3d at 237. "The second condition in the exclusion, in contrast, is satisfied if the suit, act, error, or omission *might reasonably be expected* to result in a claim or suit." Id. As the Third Circuit explained, "[t]his language does not require that the insured actually form such an expectation," but instead "gives rise to an objective test: whether a reasonable professional in the insured's position might expect a claim or suit to result." Id.

Barbone does not dispute that he knew prior to the 2006-2007 Policy's effective date that Beese-Munoz's action was dismissed as a result of his failure to serve proper summons. Barbone argues only that he "did not know and could not have reasonably

foreseen that any act, error, omission, circumstance or personal injury might have been the basis for a claim against him" by Beese-Munoz at the time he signed the application for the policy from Westport on December 10, 2004 or when he signed the renewal application the following two years.  (Def. Opp. Br. at 7.)  Thus, the only issue before the Court is whether it was reasonably foreseeable that a malpractice action could result from Barbone's failure to serve proper summons.

It is well established that effectuating proper service of a summons in order to commence the litigation process is one of the many essential duties an attorney owes their client.  See, e.g., Worth v. Tamarack Am., 47 F. Supp. 2d 1087, 1097 (S.D. Ind. 1999) ("One of the most fundamental duties an attorney owes his or her client is loosening the litigation from its moorings and effectuating proper service of process."), aff'd, 210 F.3d 377 (7th Cir. 2000); Kleeman v. Rheingold, 614 N.E.2d 712, 716 (N.Y. 1993) (noting that "proper service of process is a particularly critical component of a lawyer's over-all responsibility for commencing a client's lawsuit").

It is equally well established that attorney errors that lead to the dismissal of a client's claim are sufficient, as a matter of law, to provide a reasonable attorney grounds to believe that he may be subject to a claim for malpractice.  See, e.g., Baratta & Fenerty, 264 F.3d at 307 (finding reasonable

attorney could foresee malpractice claim where case was dismissed for failure to prosecute client's claims); Coregis Ins. Co. v. Wheeler, 24 F. Supp. 2d 475, 479-80 (E.D. Pa. 1998) (same, where case was dismissed for failure to file within the statute of limitations); Mt. Airy Ins. Co. v. Thomas, 954 F. Supp. 1073, 1080 (M.D. Pa. 1997) (same, where case was dismissed for failure to prosecute), aff'd, 149 F.3d 1165 (3d Cir. 1998).

Here, Barbone failed to serve a proper summons on the defendant in the underlying action. As a direct result of this failure, Beese-Munoz's complaint was dismissed. When faced with these facts, the Court finds as a matter of law, a reasonable professional in Barbone's position would have expected that a claim for malpractice was possible. See Colliers, 458 F.3d at 237; Ehrgood v. Coregis Ins. Co., 59 F. Supp. 2d 438 (M.D. Pa. 1998) (finding that a "reasonable attorney . . . could . . . have foreseen that he would be subject to a malpractice claim based on the errors and omissions that led to the dismissal of the underlying action" where the attorney had failed to serve a proper summons). Accordingly, Beese-Munoz's malpractice claim falls within Exclusion B of the Policy, and Barbone is not entitled to coverage under the Policy for this claim. Westport's Motion for Partial Summary Judgment must therefore be granted while Barbone's Cross-Motion for Partial Summary Judgment must be

denied.[2]

In arriving at this conclusion, the Court considered the arguments raised by Barbone and found each of them wanting. First, Barbone argued that Beese-Munoz's Complaint could have been re-filed after its dismissal without prejudice, but that Barbone concluded that the action had no merit because Beese-Munoz had failed to exhaust her administrative remedies.[3] However, a plaintiff will be precluded from refiling a case that was dismissed for failure to perfect service of process where the statute of limitations has run, even if the dismissal was without prejudice. See Petrucelli v. Bohringer & Ratzinger, GmbH, 46 F.3d 1298, 1304 n.6 (3d Cir. 1995); Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 879 n.4 (3d Cir. 1987) (holding that "the effect of a dismissal without prejudice where the statute of limitations has run is the same as dismissal with prejudice: it bars a subsequent action"). In the underlying action, Beese-

---

[2] In so holding, the Court make no findings with respect to the merits of the malpractice action that has been brought against Barbone. The issue before this Court is simply whether a reasonable attorney in Barbone's place could have foreseen that a malpractice claim would be filed as a result of the circumstances of the underlying action's dismissal, regardless of whether such a claim would ultimately be successful.

[3] In support of his argument, Barbone cites a number of cases for the well-established proposition that a Title VII plaintiff must fully and timely exhaust administrative remedies before filing suit. (See Def. Opp. Br. at 13 (citing Brown v. General Services Administration, 425 U.S. 820 (1976) and Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997)).)

Munoz had to file suit "[w]ithin 90 days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission." 42 U.S.C. § 2000e-16(c). "The ninety-day filing period serves as a statute of limitations and is strictly construed." <u>Hunter v. Keisler</u>, No. 06-5908 (RBK), 2007 WL 3171223, at *3 (D.N.J. Oct. 26, 2007) (citing <u>Burgh v. Borough Council of the Borough of Montrose</u>, 251 F.3d 465, 470 (3d Cir. 2001)). The EEOC issued Beese-Munoz its final decision on June 24, 2004, which the EEOC presumed was received within five days after it was mailed. Thus, her 90 day limitations period began to run on June 29, 2004 and expired on September 22, 2004. Accordingly, the dismissal of Beese-Munoz's action on October 21, 2004 was fatal to her claims even though it was without prejudice, as any re-filed complaint would have been time barred. Faced with this scenario, a reasonable attorney would have foreseen the possibility of a malpractice claim.

Although Barbone argues in his reply brief that he could have applied for an extension of time under Rule 4(m) to perfect service, this issue was expressly addressed by the Court in its Opinion dismissing the underlying Complaint. Specifically, the Court noted that

> Fed. R. Civ. P. 4(m) allows for an extension of time to perfect service of process, provided the plaintiff can demonstrate good cause for the failure to properly serve the defendant within 120 days after filing the complaint. Here, Plaintiff has not requested

14

> an extension of the time limit for service, nor does the record reveal *any* cause for her failure to have the Court's Clerk sign and seal the summons.

Beese-Munoz v. England, No. 04-cv-1224-JEI-AMD, slip op. at 2 n.1 (D.N.J. Oct. 21, 2004). Accordingly, Barbone's argument is unavailing on this issue.

Moreover, even if Beese-Munoz's claim could have been re-filed, the Court is not convinced by Barbone's assertion that the underlying complaint was infirm because Beese-Munoz did not timely file an administrative complaint. In fact, her employer conceded in the underlying action that she had "filed her formal EEO complaint . . . in a timely manner." Further, with respect to the issue of whether Beese-Munoz had timely met with an EEO counselor, there are certain exceptions to the general requirement of 29 C.F.R. § 1614.105(a)(1) that an employee must initiate contact with an EEO counselor within 45 days of the alleged discrimination. See 29 C.F.R. § 1614.105(a)(2) (allowing for the extension of the 45 day deadline where the employee was not notified of the deadline); Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) (providing for equitable tolling of deadline in certain circumstances). Barbone himself argued in the underlying action that the matter should not be dismissed for Beese-Munoz's failure to meet with the EEO counselor within 45 days of the alleged discrimination. As Barbone pointed out at that time, Beese-Munoz had sent a detailed letter to the EEOC

15

regarding the alleged discrimination only five days after it allegedly occurred, on December 27, 2002.  He also argued that Beese-Munoz had contact with the EEO counselor in "late January," well before the expiration of the 45 day period.  Moreover, her employer failed to demonstrate that Beese-Munoz was ever made aware of the 45 day requirement, offering only a letter to her, dated January 7, 2003 regarding the deadline, that was returned "unclaimed."  Thus, although the Court makes no findings with respect to the merits of this issue, it finds that the available arguments that Beese-Munoz did have a viable claim are sufficient to undermine Barbone's argument that he could not have reasonably foreseen a potential malpractice claim against him.

Second, Barbone argues that he could not have reasonably foreseen a malpractice claim because Beese-Munoz did not "express any confusion or outrage with the firm" when the dismissal of her complaint was explained to her and she was informed that it would not be re-filed due to alleged procedural defects.  (Def. Opp. Br. at 15.)  Barbone asserts in his reply brief that for him to have reasonably foreseen a potential malpractice claim he would have had to conclude that his client was lying to him, and that his subjective belief as to the likelihood of a claim should therefore be relevant to the determination of the second condition.  However, the law flatly contradicts this argument.  See Thomas, 954 F. Supp. at 1079 (finding that "[a]ny dispute

over whether [the attorney] believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client *would* make a claim [was] not relevant"); Abood v. Gulf Group Lloyds, No. 3:2007-299, 2008 WL 2641310, at *9 (W.D. Pa. July 1, 2008) (holding that attorney had reasonable basis to foresee a malpractice claim resulting from his error, even where his clients had told him that they would not make one); Wesport Ins. Corp. v. Goldberger & Dubin, P.C., No. 04-civ-4384 (BSJ), 2006 U.S. Dist. LEXIS 31329, at *16-17 (S.D.N.Y. Mar. 3, 2006) (same), aff'd, 255 F. Appx. 593 (2d Cir. 2007).

Courts must "distinguish between *facts* which are known to an attorney, [that] when viewed by a reasonable person, could give rise to a claim of malpractice, and *impressions* which lead the attorney to believe the client will not pursue a claim for malpractice." Thomas 954 F. Supp. at 1079. "The subjective impression or belief of the attorney, based on his perceived relationship with his client or otherwise, as to whether the client will actually pursue a malpractice claim against him falls into the second category." Id. Here, it is this second category -- Barbone's impressions of his client's inclination towards filing a malpractice claim -- upon which he relies. The law is clear, however, that such reliance is inappropriate. It is only the facts known by Barbone -- that Beese-Munoz's complaint was

17

dismissed as a result of his failure to serve a proper summons -- when viewed by a reasonable attorney in his position that are relevant. Accordingly, Barbone's reliance on this issue is also misplaced.

Finally, Barbone argues that Westport "failed to solicit the facts from its insured and evaluate the applicable law regarding defendants decision to not refile the Beese-Munoz Sex-Discrimination complaint." (Def. Opp. Br. at 11.) Accordingly, Barbone argues, Westport's motion for summary judgment is "rendered meaningless." (Id.) However, Barbone does not provide any legal support for this argument or point to any provision in the Policy requiring Westport to make such inquiries before filing suit. Accordingly, this point is unavailing.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion is granted and Defendants' Motion is denied. An Order consistent with this Opinion will be entered.

Dated: March 31, 2009         s/ Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey